UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIELLE ADAMS,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | No. 17 C 0992<br><br>Magistrate Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

Plaintiff Danielle Adams filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI), a claimant must establish that he or she is disabled within the

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

1

meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001).[2] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

## II. PROCEDURAL HISTORY

Plaintiff protectively applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on October 7, 2013, alleging she became disabled on February 1, 2011. (R. at 212, 216).[3] These claims were denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 158). On April 25, 2016, Plaintiff, represented by counsel, testified before Administrative Law Judge (ALJ) Melissa M. Santiago. (*Id.* at 40–80). The ALJ also heard testimony from Sarah Elizabeth Gibson, a vocational expert (VE). (*Id.* at 40–80, 378).

The ALJ denied Plaintiff's request for benefits on June 9, 2016. (R. at 17–33). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since May 1, 2013, the date of her prior determinations.[4] (*Id.* at 23). At step two, the ALJ found that

---

[3] There is some inconsistency in the record regarding the actual filing date of Plaintiff's DIB and SSI applications. The initial applications for DIB and SSI indicate filing dates of October 7, 2013. (R. at 212, 216). The ALJ's decision indicates that Plaintiff's DIB application was filed on September 30, 2013 and her SSI application was filed on October 7, 2013. The Plaintiff's Complaint alleges that both applications were filed on October 7, 2013. (Pl.'s Mem., Dkt. 15 at 1).
[4] Plaintiff previously filed DIB and SSI applications in 2011 and 2012, all of which were denied. (R. at 20).

3

Plaintiff had the following severe impairments: asthma, obesity, diabetes mellitus, depression with psychotic features, schizoaffective disorder, bipolar disorder, and a history of learning disorder. (*Id.* at 23). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 23–24).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[5] and determined that Plaintiff has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except that she "can occasionally stoop, kneel, crouch, or crawl. She should avoid concentrated exposure to dusts, fumes, gases, and poor ventilation. She is limited to only simple, routine instructions and tasks, and is limited to only occasional interaction with the general public, coworkers, and supervisors." (R at 25). The ALJ determined at step four that Plaintiff is unable to perform any past relevant work. (*Id.* at 31). At step five, based on Plaintiff's RFC, her vocational factors, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including packer, assembler, or sorter. (*Id.* at 32). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 33).

---

[5] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

The Appeals Council denied Plaintiff's request for review on December 9, 2016. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain her analysis of the

evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. DISCUSSION

In support of her request for reversal, Plaintiff argues that the ALJ: (1) failed to properly weigh the opinion evidence; (2) did not properly assess Plaintiff's residual functional capacity based on the available evidence; and (3) committed multiple errors with subjective symptom evaluation. (Pl.'s Mem., Dkt. 15 at 9–21).

**A. The ALJ Did Not Properly Evaluate the Treating Physician's Opinion**

Plaintiff first argues that the ALJ failed to accord proper weight to the opinions of her treating psychiatrist, Dr. Nash. By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded

6

opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2); other citation omitted).

Furthermore, even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence

7

supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6). In sum, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ's opinion must build an "accurate and logical bridge from the evidence to [the] conclusion so that [the] reviewing court[ ] may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young*, 362 F.3d at 1002 (citations omitted). To build a logical bridge, the ALJ must "sufficiently articulate [their] assessment of the evidence to assure us that [they] considered the important evidence and . . . to enable us to trace the path of [their] reasoning." *Scott*, 297 F.3d at 595 (citation omitted).

Here, the ALJ gave insufficient reasons to discount the opinions of Lawrence Nash, M.D. as Plaintiff's treating physician. It is undisputed that Dr. Nash was Plaintiff's treating psychiatrist from October 2014 through March 2016. (R. at 28, 30). The ALJ gave Dr. Nash's opinions "limited weight" because "[t]hey are inconsistent with the record as a whole, and are internally inconsistent." (R. at 30). However, the ALJ's explanations for these purported inconsistencies are problematic.

**1. The ALJ failed to demonstrate that Dr. Nash's opinion was inconsistent with the record as a whole**

8

The ALJ concluded that Dr. Nash's statements were "inconsistent with the record as a whole," by noting that Dr. Nash stated "that the claimant has marked restrictions in her daily activities, but the claimant told the consultative examiner that she is able to make her own meals, do laundry and housework, and use public transportation." (R. at 30). The ALJ cites to the "Psychiatric Consultative Examination" performed by Dr. Ana A. Gil on September 26, 2014, where Dr. Gil stated that Plaintiff can "dress herself, groom herself and take care of her own hygiene" and Plaintiff "does her own cooking, cleaning, laundry . . . [and] is able to take public transportation by herself." (*Id.* at 722). However, the ALJ failed to acknowledge that Plaintiff may be capable of completing s*ome* basic activities of daily living while still, overall, being markedly limited in completing daily activities. "An ALJ cannot disregard a claimant's limitations in performing household activities." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). In Dr. Gil's recounting of Plaintiff's activities of daily living, the examination record shows that Plaintiff "does not drive" and that while Plaintiff can do her own cooking, her trips to the grocery store are with her partner. (R. at 722). In addition, Dr. Nash's treatment history acknowledges that there are periods of time when Plaintiff is able to participate in daily life activities such as completing chores at home, (*id.* at 1287), but that at other times Plaintiff has difficulties with activities of daily living, such as when Plaintiff had trouble leaving her house for days at a time or making it to appointments and taking her medication, (*id.* at 1267), cannot focus on reading or watching TV (*id.* at 1271), or cannot care for herself or get out of bed, (*id.* at 1274).

9

Dr. Nash also stated that during a typical work day, Plaintiff's symptoms will interfere with her ability to pay attention and concentrate on even simple tasks for more than 21% of the time. (*Id.*). Particularly in mental illness cases, it is important for the ALJ to evaluate the entire record, as mental illness often fluctuates. *Scott*, 647 F.3d at 740. Dr. Nash's evaluation that Plaintiff had marked restrictions in her activities of daily living and will be unable to concentrate on simple tasks greater than 21% of the time is not inconsistent with Plaintiff's participation in some aspects of daily life. *See Bauer*, 532 F.3d at 609 ("Suppose that half the time [Plaintiff] is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job.")

Further, the ALJ failed to take into account that Plaintiff's condition (and therefore her ability to complete daily life activities) may have deteriorated between Dr. Gil's consultative examination on September 26, 2014 and when Dr. Nash completed the first "Mental Impairment Questionnaire" on September 1, 2015. (*Id.* at 719, 729). The ALJ's failure to consider that nearly a year had passed between these two evaluations ignores the possibility that Plaintiff's capabilities may have deteriorated over time. *See Scrogham v. Colvin*, 765 F.3d 685, 696 (7th Cir. 2014) (holding that the ALJ erred because she "never acknowledged in her opinion the waxing and waning of [Plaintiff]'s symptoms with time"); *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("[Plaintiff's] physical abilities a year before the alleged onset date therefore tell us little if anything about the credibility of her later complaints[.]"). For these reasons, the Court finds that the one example offered by

10

the ALJ of an inconsistency between Dr. Nash's statements and the record as a whole is insufficient to discount Dr. Nash's opinions as a treating psychiatrist.

## 2. The ALJ failed to demonstrate that Dr. Nash's opinions were internally inconsistent

Similarly, the ALJ did not adequately support her contention that Dr. Nash's statements were internally inconsistent. The ALJ only gave two examples of purported internal inconsistencies: 1) "In his initial questionnaire, [Dr. Nash] states that the claimant has 'marked' restrictions in social functioning, but he also states that the claimant has only 'mild' limitations in her ability to interact with others"; and 2) "In his second questionnaire, [Dr. Nash] states that [Plaintiff]'s functional restrictions are no more than 'moderate' but he states that the claimant is 'markedly' limited in her ability to perform most aspects of unskilled work." (R. at 30).

If the ALJ believed that the degree of limitations in one section of the questionnaire must correspond to the degree of limitations in some other functional area in a different section of the questionnaire, she failed to explain this, and therefore failed to build the necessary "logical bridge" between the evidence and her determination. *Young*, 362 F.3d at 1002. In the absence of some explanation of why different sections of the same questionnaire are necessarily contradictory, we find that the ALJ failed to "sufficiently articulate [her] assessment of the evidence to assure us that [she] considered the important evidence and . . . to enable us to trace the path of [her] reasoning." *Scott*, 297 F.3d at 595 (citation omitted); *see also Frobes*

11

*v. Barnhart*, 467 F. Supp. 2d 808, 8189 (N.D. Ill. 2006) ("If the ALJ concludes that the treating physician's opinion is inconsistent with other evidence, she must explain the inconsistency.")

Additionally, while the ALJ identified two instances of purported internal inconsistencies, she ignored evidence from Dr. Nash's treatment notes that were supportive of his assessments. *See Punzio*, 630 F.3d at 710 (finding that "cherry-picking" parts of a plaintiff's file to undermine a treating physician's overall assessment "demonstrate[s] a fundamental, but regrettably all-too-common, misunderstanding of mental illness"). For example, Dr. Nash's assessments of Plaintiff's limitations in social functioning are corroborated throughout his two-year treatment history with Plaintiff, where he indicated at least seven times that Plaintiff has "Problems Related to the Social Environment". (*Id.* at 1258, 1268, 1271, 1283, 1289, 1296, 1302). Further, on the same date that Dr. Nash completed his initial questionnaire, his treatment notes indicated that Plaintiff's insight was poor, that she still experienced auditory and visual hallucinations, and that she had "Problems Related to the Social Environment." (R. at 1299). The Court finds the ALJ erred by failing to address supportive evidence from Dr. Nash's own treatment notes, corroborating his assessments. *See Scrogham*, 765 F.3d at 697 (finding the ALJ erred when she "neither considered nor explained her decision not to consider the rest of [a treating physician's] copious records, which, upon closer review, might indicate that [claimant] was substantially more limited in his physical abilities than the ALJ initially concluded.").

### 3. The ALJ failed to Address Regulatory Factors

Further, even when an ALJ decides not to give controlling weight to the opinions of a treating physician, she still must address the factors listed in 20 C.F.R. § 404.1527 to determine what weight to give those opinions. Social Security Ruling (SSR)[6] 96-2p. SSR 92-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." (*Id.*). Here, the ALJ failed to minimally address many of the enumerated factors provided in 20 C.F.R. § 404.1527. Specifically, the ALJ did not discuss the nature and extent of the treatment relationship, the frequency of examination, or whether Dr. Nash had a relevant specialty. The ALJ must "sufficiently account [ ] for the factors in 20 C.F.R. 404.1527." *Schreiber v. Colvin*, 519 Fed. Appx. 951, 959 (7th Cir. 2013) (unpublished decision). The ALJ did not do so here. Multiple factors, particularly the nature and extent of the treatment relationship and Dr. Nash's specialty as a psychiatrist, favor crediting Dr. Nash's opinions, and "proper consideration of these factors may have caused the ALJ to accord greater weight to [Dr. Nash's] opinions." *Campbell*, 627 F.3d at 308. Accordingly, remand is necessary for the ALJ to properly analyze and explain the weight to be afforded to the opinions of Dr. Nash.

---

[6] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); see 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

## B. Other Issues

Because the Court is remanding to reevaluate the weight to be given to the treating physician's opinions, the Court chooses not to address Plaintiff's other arguments that the ALJ committed multiple errors with symptom evaluation and improperly assessed Plaintiff's RFC. However, on remand, after determining the weight to be given to the treating physician's opinions, the ALJ shall reevaluate Plaintiff's physical and mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). Finally, with the assistance of a VE, the ALJ shall determine whether Plaintiff can perform her past relevant work or if there are jobs that exist in significant numbers that Plaintiff can perform.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [15] is GRANTED. Defendant's Motion for Summary Judgment [18] is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this Opinion.

Dated: December 18, 2017                    E N T E R:

_____
MARY M. ROWLAND
United States Magistrate Judge